# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES SEMME FRAZIER )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA )<br>)<br>Respondent. ) | Civil No. 04-1835<br>(Criminal No. 02-186) |

## MEMORANDUM OPINION

CONTI, District Judge.

Pending before the court is a motion to vacate or set aside judgment of conviction by a person in federal custody pursuant to 28 U.S.C. § 2255 ("petitioner's motion") (Docket No. 129) filed by petitioner James Semme Frazier ("petitioner"). Upon reviewing petitioner's motion and the government's brief in opposition and considering the evidence adduced during the hearing held on petitioner's motion and the proposed findings of fact and conclusions of law submitted by each party, the court will deny petitioner's motion for the reasons set forth herein.

**I. Background**

On September 10, 2002, a federal grand jury returned an indictment charging petitioner with possession of a firearm by a convicted felon on or about May 31, 2002, in violation of 18 U.S.C. § 922(g)(1) (count one) and with possession with intent to distribute five (5) grams or more of a mixture and substance containing a detectable amount of cocaine base, in the form commonly known as crack, a Schedule II controlled substance, on or about June 8, 2002, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii) (count two). (Docket No. 1.)

On May 9, 2003 and May 23, 2003 this court held a suppression hearing on petitioner's motion seeking to suppress evidence at each count returned in the indictment. (Docket Nos. 27, 29.) This court denied petitioner's suppression motion. (Docket No. 33.)

The court granted petitioner's motion to sever counts one and two for trial. Count one was tried first and on October 2, 2003, a jury found petitioner guilty of possession of a firearm by a convicted felon (count one). On November 12, 2004, petitioner was sentenced at count one to imprisonment for a term of eighty-five months to be followed by supervised release for a term of thirty-six months. Although petitioner did not appeal the suppression ruling or the sentence at count one, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal. . . ." Massaro v. United States, 538 U.S. 500, 503 (2003) (citations omitted).[1]

On or about December 2, 2004 the clerk of court received and filed petitioner's motion to vacate or set aside judgment of conviction by a person in federal custody pursuant to 28 U.S.C. § 2255.[2] (Docket No. 129.) In his motion, petitioner listed numerous grounds for his claim that he is being held in violation of the Constitution, laws or treaties of the United States and his prayer for relief that the court vacate or set aside the judgment of conviction against petitioner.

---

[1] The Supreme Court in Massaro held that ineffective assistance of counsel claims may be collaterally reviewed even when those claims were not raised on direct appeal. Thus, a claim based upon ineffective assistance of counsel is an exception to the general rule that only claims raised on direct appeal may be raised on collateral review absent a showing of cause and prejudice. See Massaro, 538 U.S. at 504 (citing United States v. Frady, 456 U.S. 152, 167-68 (1982); Bousley v. United States, 523 U.S. 614, 621-22 (1998)). "The procedural-default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." Id.

[2] The instant motion concerns only the conviction at count one. Petitioner's conviction at count two is the subject of a separate section 2255 motion (Docket No. 257), which is not addressed in this opinion.

Specifically, petitioner alleged ineffective assistance of counsel in violation of the Sixth Amendment based upon counsel's performance at the suppression hearing and the trial at count one. Petitioner further alleged ineffective assistance of counsel in violation of the Fourth Amendment based upon certain purported failures of counsel at the suppression hearing.

On January 18, 2005, the court issued a notice that the motion to vacate had been filed and directed the government to file its response and a brief in opposition on or before February 4, 2005. (Docket No. 136.) After being granted several motions to extend time to respond, on April 15, 2005, the government filed its response in opposition, *nunc pro tunc*. (Docket No. 156.)

On February 1, 2006, the court issued an order granting petitioner an evidentiary hearing and appointed counsel to represent petitioner. (Docket No. 206.) The court granted the government's motion for limited discovery. (Docket No. 224.) After discovery, an evidentiary hearing was held on April 27, 2007, May 4, 2007 and May 25, 2007. At the evidentiary hearing on petitioner's motion, petitioner abandoned all but one of his claims. Petitioner only challenged his counsel's alleged failure to impeach the credibility of the arresting officer at the suppression hearing and educe a credibility ruling from the court. Evid. Hr'g Tr. 5/25/07 at 38; 46-47. On October 31, 2007, petitioner filed proposed findings of fact and conclusions of law. On November 1, 2007, the government filed proposed findings of fact and conclusions of law.

The court now makes the following findings of fact and conclusions of law.

## II. Standard of Review

A district court is required to hold an evidentiary hearing on a motion to vacate sentence filed pursuant to 28 U.S.C. § 2255 unless the motions and files and records of the case show conclusively that the movant is not entitled to relief. 28 U.S.C. § 2255(b) ("Unless the motion

3

and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."); United States v. Booth, 432 F.3d 542, 545-46 (3d Cir. 2005).

Under 28 U.S.C. § 2255(a), a federal prisoner in custody may move the court which imposed the sentence to vacate, set aside or correct the sentence upon the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." The Supreme Court read the statute as stating four grounds upon which relief can be granted:

> (1) "that the sentence was imposed in violation of the Constitution or laws of the United States," (2) "that the court was without jurisdiction to impose such sentence," (3) "that the sentence was in excess of the maximum authorized by law," and (4) that the sentence "is otherwise subject to collateral attack."

CHARLES ALAN WRIGHT, NANCY J. KING & SUSAN R. KLEIN, FEDERAL PRACTICE AND PROCEDURE § 593 (3d ed. 2004) (quoting Hill v. United States, 368 U.S. 424, 426-27 (1962)). The statute provides as a remedy for a sentence imposed in violation of law that "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). In this proceeding only the first ground – that the sentence was imposed in violation of the Constitution or laws of the United States – is implicated.

### III. FINDINGS OF FACT

#### A. Suppression Hearing Strategy

1. Initially petitioner was represented by Khadija Diggs who was replaced by Assistant Federal Public Defender Thomas Livingston ("Mr. Livingston"). Mr. Livingston represented petitioner at the May 9 and May 23, 2003 hearing relating to petitioner's motion to suppress evidence. Petitioner's proposed findings of fact ("Pet'r's Facts") ¶1; Respondent's proposed findings of fact ("Resp't's Facts") ¶ II.B.1; Evid. Hr'g Tr. 5/4/2007 at 15-16.

2. Mr. Livingston had frequent contact with petitioner prior to the suppression hearing concerning the strategy to be employed at the suppression hearing. Evid. Hr'g Tr. 5/4/2007 at 36, 58.

3. The strategy developed by petitioner and Mr. Livingston for the suppression hearing consisted of challenging the credibility of Officer Philip Mercurio ("Officer Mercurio"). Officer Mercurio was the arresting officer who testified at the suppression hearing. The strategy involved using more credible evidence to contradict the officer's testimony and establish a factual basis for suppression. The strategy could also be useful to elicit inconsistent statements to impeach the officer at trial. Evid. Hr'g Tr. 5/4/2007 at 38.

4. A collateral aspect of that strategy was to elicit a credibility determination from the court. Pet'r's Facts ¶ 6; Resp't's Facts ¶¶ II.D.4, 6, 14, II.E.6, 9, 17, 18; Evid. Hr'g Tr. 5/4/2007 at 64-65.

### B. The Suppression Hearing

5.   On May 9, 2003, immediately prior to the commencement of the suppression hearing, the government provided Mr. Livingston Jencks[3] material consisting of police reports written by Officer Mercurio regarding the May 31, 2002 (count one) and June 8, 2002 (count two) incidents. Pet'r's Facts ¶ 2; Resp't's Facts ¶¶ 14, 15.

6.   Mr. Livingston did not request a recess to review the police reports. Pet'r's Facts ¶ 4.

7.   Mr. Livingston reviewed the police reports before the hearing and reviewed those reports with petitioner in court. Evid. Hr'g Tr. 5/25/2007 at 21.

8.   After the Jencks material was received, the defense strategy at the suppression hearing expanded to include an argument that the identification of petitioner by Officer Mercurio for purposes of count one was fruit of the poisonous tree of the alleged illegal stop being challenged with respect to count two. Evid. Hr'g. Tr. 5/4/2007 at 62.

9.   At the suppression hearing, Mr. Livingston cross-examined Officer Mercurio regarding the duration and quality of his observation of petitioner during the May 31, 2002 encounter. Supp. Tr. 5/9/2003 at 29-36.

10.   Mr. Livingston also cross-examined Officer Mercurio regarding the factual circumstances regarding the entire May 31, 2002 event, including the recovery of a cell phone dropped by the actor during the May 31, 2002 event, and that the actor involved in the May 31, 2002 event had his hair braided in corn rows. Id. at 27-36, 52-53.

---

[3]Jencks v. United States, 353 U.S. 657 (1957) (government must produce documents containing statements of a government witness).

11.     The facts surrounding the June 8, 2002 encounter were likewise the subject of cross-examination of Officer Mercurio by Mr. Livingston, with particular focus upon whether a hand-to-hand transaction took place between petitioner and an unknown individual and whether there was physical contact between Officer Mercurio and petitioner prior to petitioner's flight from police on the night in question.  Id. at 36-42.

12.     Mr. Livingston questioned Officer Mercurio during cross-examination with respect to the identification procedures giving rise to the June 14, 2002 police report identifying petitioner as the actor from the May 31, 2002 event. Id. at 44-54.

13.     During cross-examination of Officer Mercurio, Mr. Livingston attempted to impeach the witness by eliciting testimony that would be contradicted by the testimony of the witnesses Mr. Livingston would call, consistent with the strategy for the suppression hearing developed by petitioner and Mr. Livingston.  Evid. Hr'g Tr. 5/4/2007 at 63;  Evid. Hr'g Tr. 5/25/07 at 27-28.

14.     Mr. Livingston made use of the police reports he received that morning as Jencks material during his cross-examination of Officer Mercurio at the suppression hearing.  Id. ¶¶ II.E.4, 6, 9, 14; Supp. Tr. 5/9/2003 at 44-52.

15.     Mr. Livingston's cross-examination of Officer Mercurio did not focus on other occasions when Officer Mercurio allegedly lied about individuals dropping contraband because Mr. Livingston knew that petitioner would testify at the suppression hearing – as he did –  that he actually dropped the contraband.  Evid. Hr'g Tr. 5/25/2007 at 26-27.

16.     Officer Mercurio testified at the suppression hearing about using binoculars to observe petitioner on June 8, 2002.  Supp. Tr. 5/9/2003 at 23.  Mr. Livingston did not question Officer Mercurio during the suppression hearing about the police report not referring to his using

7

binoculars. Evid. Hr'g Tr. 5/25/2007 at 25-26. The police report, however, referred to surveillance being conducted which is not inconsistent with the use of binoculars. Id.

## IV. CONCLUSIONS OF LAW

### A. Ineffective Assistance of Counsel

1.  To establish ineffective assistance of counsel in violation of the Sixth Amendment, petitioner must prove (1) deficient represe/ntation, meaning that counsel's representation fell below an objective standard of reasonableness; and (2) prejudice, meaning that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Williams v. Taylor, 529 U.S. 362, 390-91 (2000) (citing Strickland v. Washington, 466 U.S. 668, 687-88 (1984)).

    a. Prejudice prong

2.  Concerning the prejudice prong, a "reasonable probability is a probability sufficient to undermine confidence in the outcome." Williams, 529 U.S. at 391 (citing Strickland v. Washington, 466 U.S. at 694).

3.  The United States Court of Appeals for the Third Circuit directed courts to address the prejudice prong of the analysis first. *See* McAleese v. Mazurkiewicz, 1 F.3d 159, 170 (3d Cir.), cert. denied, 510 U.S. 1028 (1993) ("Indeed, this Court has read Strickland as requiring the courts to decide first whether the assumed deficient conduct of counsel prejudiced the defendant . . . .") (internal quotations and citations omitted). The court of appeals in McAleese noted Strickland recognized that

> "a court need not determine whether counsel's
> performance was deficient before examining the
> prejudice suffered by the defendant as a result of the

> alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."

Id. at 171 (quoting Strickland 466 U.S. at 697).

4. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690. "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected . . . if they are based on professional judgment." Strickland, 466 U.S. at 681. "The Supreme Court directs that our 'scrutiny of counsel's performance must be highly deferential' to avoid holding counsel incompetent because of reasonable strategic or tactical judgments which, with the benefit of tactical hindsight, might prove not to have best served his client's interests." United States v. Loughery, 908 F.2d 1014, 1018 (D.C. Cir. 1990) (quoting Strickland, 466 U.S. at 689).

5. Petitioner asserts that but for defense counsel's failure to impeach the arresting officer at the suppression hearing and elicit a credibility determination from the court, the evidence seized concomitant with his June 8, 2002 arrest would have been suppressed. Plaintiff argues the suppression of that evidence could have created a reasonable probability that the outcome of petitioner's trial at count one would have been different. Petitioner's argument, however, oversimplifies the issue before the court. The prejudice analysis in this case requires the court to determine as a threshold matter whether but for the counsel's performance at the suppression hearing the evidence in issue would have been suppressed. To find prejudice to the petitioner the

9

court must determine whether a purported failure of counsel to cross-examine the officer about the Jencks material would have caused the result of the suppression hearing to be different.

6. The court cannot conclude that the decision to deny petitioner's suppression motion would have been different if defense counsel had more extensively used the police reports to impeach the testimony of Officer Mercurio, as petitioner asserts he should have. Defense counsel's approach consisted of eliciting detailed testimony regarding the officer's encounters with petitioner, extensive cross-examination of the witness regarding whether on June 8, 2002, there was a hand-to-hand transaction between petitioner and another individual witnessed by Officer Mercurio, and whether on June 8, 2002, there was physical contact with petitioner by Officer Mercurio prior to petitioner's flight, and calling witnesses to contradict the testimony of Officer Mercurio. The inconsistencies between the information contained in the police reports and Officer Mercurio's testimony that petitioner urges defense counsel should have more extensively exploited related to details that do not implicate ineffective assistance of counsel, i.e. use of binoculars which could have been consistent with the police report, the contraband which defendant admitted he dropped and his hair having been in corn rows on May 21, 2002 (count one) which was not in issue for the June 8, 2002 incident (count two). Evid. Hr'g Tr. 5/25/207 at 21-28. Given the defense counsel's approach to impeaching the testimony of Officer Mercurio, this court cannot find that the credibility of the officer would have been impeached if the counsel had concentrated on the narrow particulars petitioner asserts defense counsel should have followed up in cross-examining the officer.

7. Petitioner alleges prejudice predicated upon defense counsel's failure to educe a credibility determination from the court. That argument lacks merit because consistent with the

findings of fact enunciated in the court's memorandum opinion dated July 3, 2003 relating to the suppression motion (Docket No. 32), the court made a determination to credit the testimony of Officer Mercurio based upon the testimony and evidence adduced at the suppression hearing which included questioning about the Jencks material. The factual findings of the court credited the testimony of Officer Mercurio which directly conflicted on material matters from the testimony of petitioner.

8. The result of the suppression hearing would not have been different had defense counsel more extensively cross-examined Officer Mercurio regarding the Jencks material. Therefore, the court finds that petitioner has not been prejudiced by counsel's performance.

    b. Deficient representation prong

9. The record supports a finding that defense counsel developed and pursued a strategy at the suppression hearing that was designed to challenge the credibility of the arresting officer, and to impeach him by offering contradictory evidence, including the testimony of petitioner. Defense counsel chose not to use certain aspects of the police report in his cross-examination of Mercurio because he knew that petitioner would testify – as he did – that on June 8, 2002, he dropped crack cocaine while running away from Officer Mercurio. The fact that defense counsel chose to challenge Officer Mercurio's credibility by methods other than more extensively using the police reports provided shortly before the suppression hearing, as petitioner suggests he should have done, does not render his conduct deficient. Furthermore, petitioner offers no evidence that defense counsel did not review the police reports before the suppression hearing, as petitioner asserts, but only that he did not use them to the extent that petitioner seems to think he

should have during the suppression hearing. Defense counsel's conduct does not rise to the level of deficient representation.

10.     Petitioner failed to satisfy either prong of his Sixth Amendment ineffective assistance claim raised in his section 2255 motion. Petitioner's issues with respect to the strategic and tactical choices made by his counsel at the suppression hearing under the Strickland test do not implicate ineffective assistance of counsel. The role of the court is not to second guess the professional decisions of defense counsel unless those decisions were unreasonable.

### B. Fourth Amendment

9.      The parties devoted significant attention to Fourth Amendment arguments, including discussion of the fruit of the poisonous tree doctrine, as well as analyses of the seminal search and seizure decision of the Supreme Court in Terry v. Ohio, 392 U.S. 1 (1968) and California v. Hodari D., 499 U.S. 621 (1991), presumptively because of the requirement that

> [w]here defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

Kimmelman v. Morrison, 477 U.S. 365, 375 (1986). Because the court finds petitioner's ineffective assistance of counsel claim unsupported, the court need not reach the issue. A section 2255 motion for ineffective assistance of counsel does not properly afford a petitioner the opportunity to relitigate adverse decisions on suppression motions, and the court has already rendered its Fourth Amendment decision on petitioner's suppression motion.

### IV. Certificate of Appealability

When a district court issues a final order denying a section 2255 petition, the court must also make a determination as to whether a certificate of appealability ("COA") should issue or the clerk of the court of appeals shall remand the case to the district court for a prompt determination as to whether a certificate should issue. *See* 3rd Cir. LAR. 22.2 (2002). Based upon the motion and files and records of the case, and for the reasons set forth herein, the court finds that petitioner has not shown a substantial denial of a constitutional right. Therefore, a COA should not issue.

**V. Order**

AND NOW, this 29th day of July, 2008, upon consideration of petitioner's motion and the government's brief in opposition, IT IS HEREBY ORDERED that petitioner's motion to vacate or set aside judgment of conviction by a person in federal custody pursuant to 28 U.S.C. § 2255 (Docket No. 129) is DENIED.

IT IS FURTHER ORDERED that no certificate of appealability should issue.

By the court:

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
United States District Judge

cc: Patrick J. Thomassey
For the Defendant

Scott W. Brady
Assistant United States Attorney