**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| JAMES SEMME FRAZIER | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil No. 08-382 |
| | ) | (Criminal No. 02-186) |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Respondent. | ) | |


## MEMORANDUM OPINION

CONTI, District Judge.

Pending before the court is a motion to vacate or set aside judgment of conviction by a

person in federal custody pursuant to 28 U.S.C. § 2255 ("motion to vacate") (Doc. No. 257 at

Criminal No. 02-186) filed by petitioner James Semme Frazier ("petitioner").  On January 22,

2009, the court issued a memorandum opinion (Doc. No. 268) denying a motion to vacate with

respect to the issue whether Federal Public Defender Thomas Livingston ("Livingston") was

ineffective for failing to use police reports to impeach a witness for the government.  In that

same memorandum opinion, however, the court granted petitioner's motion to amend the motion

to vacate.  The amendment added the additional issue whether Livingston was ineffective for

failing to request a continuance to take photographs of the scene where a police officer alleged

that he observed a hand-to-hand drug transaction (Doc. No. 264).  The court afforded the

government the opportunity to respond to the added issue.  Upon reviewing petitioner's amended

motion to vacate and the government's response to petitioner's amended motion to vacate (Doc.

No. 277), the court will deny petitioner's motion to vacate with respect to the amended claim, for the reasons set forth herein. Since the court previously denied the motion to vacate with respect to his other issue, the motion to vacate is denied in its entirety.

## I. Background[1]

On the night of June 8, 2002, Officer Philip Mercurio ("Officer Mercurio" or "Mercurio") and Officer Robert Kavals, while working plain-clothes patrol in a neighborhood known for drug-trafficking, alleged they observed two men engage in a discussion and a hand-to-hand exchange. The officers, thinking the exchange was a possible drug transaction, drove their car toward the men and approached the individual they believed to be the seller. This individual was later identified as petitioner. Mercurio asked to speak with petitioner, and petitioner fled. While fleeing, Mercurio observed petitioner remove a bag of cocaine from his right pocket, which petitioner discarded. Mercurio recovered the bag of cocaine. The officers called for back-up, and law enforcement officials were able to surround petitioner and eventually place him under arrest. After petitioner's arrest, Mercurio identified petitioner, a convicted felon, as the person who had a firearm on May 31, 2002 and fled from the police on that date.

On September 10, 2002, a federal grand jury returned an indictment charging petitioner with possession of a firearm by a convicted felon on or about May 31, 2002, in violation of 18 U.S.C. § 922(g)(1) ("Count One") and with possession with intent to distribute five (5) grams or more of a mixture and substance containing a detectable amount of cocaine base, in the form commonly known as crack, a Schedule II controlled substance, on or about June 8, 2002, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii) ("Count Two"). (Doc. No. 1.)

---

[1] Many of the facts contained in the Background section of this memorandum opinion are also set forth in the court's January 22, 2009 memorandum opinion (Doc. No. 268). Those facts are repeated here for the sake of convenience.

Petitioner filed a motion to suppress (Doc. No. 18) and a motion to sever the two counts (Doc. No. 17). After a suppression hearing, which was held over two days, May 9 and May 23, 2003, the court denied the motion to suppress and granted the motion to sever (Doc. Nos. 27, 32, 33). Petitioner was represented by Livingston during the suppression hearing and the trial of Count One. Count One was tried before a jury, which on October 2, 2003, returned a verdict of guilty. (Doc. No. 67.) Petitioner was represented by Attorney Thomas Farrell during the trial of Count Two. Count Two was tried before a jury, and concluded in a mistrial on November 19, 2004. (Doc. No. 127.) After a retrial, a jury on March 18, 2005 returned a verdict of guilty at Count Two. (Doc. No. 153.)

On December 2, 2004, petitioner filed a motion to vacate pursuant to 28 U.S.C. § 2255 with respect to Count One ("Count One § 2255 Motion"). (Doc. No. 129.) Counsel was appointed to represent petitioner and on April 27, May 4, and May 25, 2007, a hearing was held on that motion. After the parties submitted proposed findings of fact and conclusion of law, the court denied the motion. The issues raised in the Count One § 2255 Motion related to alleged ineffective assistance of counsel during the suppression hearing. Petitioner's currently-pending motion to vacate pursuant to 28 U.S.C. § 2255 with respect to Count Two was filed on March 17, 2008, and his motion to amend was filed on August 13, 2008, raising issues of ineffective assistance of counsel, based upon counsel's conduct during the suppression hearing (the motion as amended, "Count Two § 2255 Motion").

**The Suppression Hearing**

On May 9, 2003 and May 23, 2003, this court held the suppression hearing on petitioner's motion seeking to suppress evidence at each count returned in the indictment. (Doc. Nos. 27, 29.) At the hearing, petitioner was represented by Livingston. (Petitioner's proposed

findings of fact (Doc. No. 254) ("Pet'r's Facts") ¶ 1; Respondent's proposed findings of fact (Doc. No. 255) ("Resp't's Facts") ¶ II.B.1; Evid. Hr'g Tr. 5/4/2007 at 15-16.)[2]

Prior to the suppression hearing, Livingston frequently contacted petitioner concerning the strategy to be employed at the suppression hearing. (Evid. Hr'g Tr. 5/4/2007 at 36, 58.)[3] In preparation for the suppression hearing, Livingston visited the scene where Officer Mercurio alleged he observed petitioner engage in a hand-to-hand exchange. Livingston testified as follows:

> Q.    And you testified that you and perhaps your investigator went to the site on Susquehanna Street to examine the distance and the lighting in order to potentially attack Officer Mercurio's credibility during the hearing.
>
> A.    Correct.

(Evid. Hr'g Tr. 5/25/2007 (Doc. No. 249) at 28.) Livingston photographed the area during the light of day in an effort to discover bases upon which he could impeach Officer Mercurio. Livingston stated:

> [O]ne of the questions in terms of us investigating and going out to that neighborhood, preparing for that hearing and taking pictures by light of day, is trying to figure out with that report, which we received before May 9th, where precisely Mercurio was as another possible basis for impeachment as either lighting conditions or distance or physical obstacles that would disable him from being able to see this alleged hand-to-hand exchange.

(Evid. Hr'g Tr. 5/25/2007 at 22.)

The strategy developed by petitioner and Livingston for the suppression hearing consisted of challenging the credibility of Officer Mercurio. Officer Mercurio was the arresting officer who testified at the suppression hearing. The strategy involved using credible evidence to

[2] The parties proposed findings of fact were submitted in connection with the Count One § 2255 Motion.
[3] The transcript cited is the transcript of the hearing held in connection with the Count One § 2255 Motion.

contradict the officer's testimony and establish a factual basis for suppression. The strategy could also be useful to elicit inconsistent statements to impeach the officer at trial. (Evid. Hr'g Tr. 5/4/2007 at 38.) A collateral aspect of that strategy was to elicit a credibility determination from the court. (Pet'r's Facts ¶ 6; Resp't's Facts ¶¶ II.D.4, 6, 14, II.E.6, 9, 17, 18; Evid. Hr'g Tr. 5/4/2007 at 64-65.)

On May 9, 2003, immediately prior to the commencement of the suppression hearing, the government provided Livingston <u>Jencks</u>[4] material consisting of police reports written by Officer Mercurio regarding the May 31, 2002 (Count One) and June 8, 2002 (Count Two) incidents. (Pet'r's Facts ¶ 2; Resp't's Facts ¶¶ 14, 15.) Livingston did not request a continuance or recess to review the police reports. (Pet'r's Facts ¶ 4.) Mr. Livingston reviewed the police reports before the hearing and reviewed those reports with petitioner in court. (Evid. Hr'g Tr. 5/25/2007 at 21.)

After the <u>Jencks</u> material was received, the defense strategy at the suppression hearing expanded to include an argument that the identification of petitioner by Officer Mercurio for purposes of Count One was fruit of the poisonous tree of the alleged illegal stop being challenged with respect to Count Two. (Evid. Hr'g. Tr. 5/4/2007 at 62.)

At the suppression hearing, Livingston cross-examined Officer Mercurio regarding the duration and quality of his observation of petitioner during the May 31, 2002 encounter. (Supp. Tr. (Doc. No. 28) 5/9/2003 at 29-36.) Livingston also cross-examined Officer Mercurio regarding the factual circumstances regarding the entire May 31, 2002 event, including the recovery of a cell phone dropped by the actor during the May 31, 2002 event, and that the actor involved in the May 31, 2002 event had his hair braided in corn rows. (<u>Id.</u> at 27-36, 52-53.)

---

[4] <u>Jencks v. United States</u>, 353 U.S. 657 (1957) (government must produce documents containing statements of a government witness).

Livingston questioned Officer Mercurio during cross-examination with respect to the identification procedures giving rise to the June 14, 2002 police report identifying petitioner as the actor from the May 31, 2002 event. (Id. at 44-54.)

The facts surrounding the June 8, 2002 encounter were likewise the subject of cross-examination of Officer Mercurio by Livingston, with particular focus upon whether a hand-to-hand transaction took place between petitioner and an unknown individual and whether there was physical contact between Officer Mercurio and petitioner prior to petitioner's flight from police on the night in question. (Id. at 36-42.)

During cross-examination of Officer Mercurio, Livingston attempted to impeach the witness by eliciting testimony that would be contradicted by the testimony of the witnesses Livingston would call, consistent with the strategy for the suppression hearing developed by petitioner and Livingston. (Evid. Hr'g Tr. 5/4/2007 at 63; Evid. Hr'g Tr. 5/25/07 at 27-28. 14.) Livingston made use of the police reports he received that morning as Jencks material during his cross-examination of Officer Mercurio at the suppression hearing. (Id. ¶¶ II.E.4, 6, 9, 14; Supp. Tr. 5/9/2003 at 44-52.)

Livingston's cross-examination of Officer Mercurio did not focus on other occasions when Officer Mercurio allegedly lied about individuals dropping contraband because Livingston knew that petitioner would testify – as he did – at the suppression hearing that he actually dropped the contraband. (Evid. Hr'g Tr. 5/25/2007 at 26-27.)

Officer Mercurio testified at the suppression hearing about using binoculars to observe petitioner on June 8, 2002. (Supp. Tr. 5/9/2003 at 23.) Livingston did not question Officer Mercurio during the suppression hearing about the police report not referring to his using binoculars. (Evid. Hr'g Tr. 5/25/2007 at 25-26.) The police report, however, referred to

surveillance being conducted which is not inconsistent with the use of binoculars.  (Id.)  At the

suppression hearing, Livingston also questioned Mercurio about his vantage point from which he

allegedly observed the drug transaction:

> Q	What you are saying is that on that day, your first sighting of James Frazier occurs when he's standing about a third of the way down the 7500 block - - a third of the way from the 7400 block of Susquehanna Street, correct?
>
> A	He was about a third of the way up the 7500 block.
>
> Q	So, if the intersection that separates 74 and 7500 is alley, a reference we call that - -
>
> A	Yes.
>
> Q	- - Your car, which is, again, the same Chevy Lumina, is parked on the 7400 block?
>
> A	Correct.
>
> Q	Is it on the side of the street where you saw James Frazier or is it on the opposite side?
>
> A	I believe it was on the same side that Mr. Frazier was on.
>
> Q	Can we agree that Susquehanna Street, for this stretch from 7400 heading to Braddock Avenue, is a one way street?
>
> A	Correct.
>
> Q	And you were parked facing the direction of traffic, as opposed to parked facing opposing traffic?
>
> A	Correct.

(Supp. Tr. 5/9/2003 at 36-37.)

At the suppression hearing, Livingston called Aschlea Leviege ("Leviege"), who resided

at 7526 Susquehanna Street.  During his questioning of Leviege, Livingston made use of

Government Exhibit No. 1, which was a diagram of the streets in the area:

Q      At some point, did you leave the inside of your house and come out on your front porch?

A      Yes, I did.

Q      And when you were out on your front porch, did James Frazier come from inside your house and go outside?

A      Yes, he did.

Q      When he came outside, where were you?

A      I was on the porch closer to the steps, closer to my railing.

Q      Okay.  What I am going to ask you to do is step down for a second, and referring to this chart, which has been marked Government Exhibit No. 1 - - your house address again is what?

A      7526.

Q      7526 is on the southerly side of Susquehanna Street, correct?

A      Yes.

Q      So, you are sitting on your front porch, or standing on your front porch when James Frazier comes from inside to outside.

A      Yes.

Q      What are you doing on the front porch as he comes outside?

A      I was talking to my friends.

Q      You can step back up on the witness stand.
        So, you are talking to a friend of yours on the porch and James Frazier is outside?

A      Yes.

Q      Where does he go?

A      He crossed the street to the end house on the northern block.

> Q      So he is now across Susquehanna Street, but still on the 7500 block?
>
> A      Yes.

(Id. at 60-62.)

After Leviege testified, Livingston called petitioner to testify about the June 8, 2002 incident.  Petitioner stated that he did not engage in a hand-to-hand transaction on that night.  (Supp. Tr. 5/9/2003 at 78.)  He admitted, however, that as he was fleeing Officer Mercurio, he discarded the contents of his pockets, which included crack cocaine.  (Id. at 82-83.)  In connection with petitioner's testimony, Livingston moved for the admission of Defendant's Exhibit B, which was a photograph of the block on which Mercurio alleged to have witnessed a hand-to-hand transaction.  (Id. at 88.)  The photograph was admitted.  Using the photograph, Livingston questioned petitioner with respect to the location of the alleged hand-to-hand transaction:

> Q      I'm going to show you what I'll mark as Defendant's Exhibit B.
>        I'll let you look at Defendant's Exhibit B, which is a photograph.  And once you look at it, I want you to describe that photograph in general terms.  And then after you have done that, I'll have a few questions for you.
>
> A      This picture right here, this is the alleyway that separates the 7500 block from the 7400 block.  Street signs say right there, north, either Richard(Sp), or something.  That's the name of the street.
>
> Q      That picture is taken from the 7400 block looking down Susquehanna Street toward the 7500 block?
>
> A      The 7500 block.
>
> Q      Now, this picture was taken in broad daylight.  We are talking about June 8 at roughly ten-thirty at night, so it is all going to be dark at night then, right?

A       Yes.

Q       The distances as portrayed on this picture between where the alley is and where the 7400 block ends, how far along down 7500 Susquehanna Street, that block, how far down were you when the police approached you?

A       Almost all the way toward the end because the door I was knocking on is exactly the last row house right there.

Q       So, referring to Government Exhibit No. 1, where we have one of the labeled things is a rectangle called 7500 block?

A       Yes.

Q       As best you can estimate, in terms of thirds or quarters or halves, how far down was the house where you were when the police approached you, if the starting point is the corner of the alley in 7500, and the next intersection which we have identified as Braddock Avenue, if this would be starting point and this would be one hundred percent?

A       Yes.

Q       How far along was the row house that we are talking about?

A       I would say a little over three-quarters, about 80 percent into the block, into the 7500 block from the 7400 block.

Q       So, a police car that would have been unmarked on the 7400 block, he would be at least the distance of the alley plus three-quarters of a smaller city block away - -

A       Right.

Q       - - correct?

A       Yes.

(Id. at 87-88.)

On July 3, 2003, this court denied petitioner's suppression motion.  (Doc. Nos. 32, 33.)

**Count One**

On October 2, 2003, petitioner was convicted of possession of a firearm by a convicted felon (Count One), after a jury trial. On November 12, 2004, petitioner was sentenced at Count One to imprisonment for a term of eighty-five months to be followed by supervised release for a term of thirty-six months. A judgment with respect to Count One was entered on November 17, 2004 (Doc. No. 126), and amended on November 23, 2004 (Doc. No. 128). Although petitioner did not appeal the suppression ruling or the sentence at Count One, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal. . . ." Massaro v. United States, 538 U.S. 500, 503 (2003) (citations omitted).[5]

On or about December 2, 2004 the clerk of court received and filed petitioner's Count One § 2255 Motion. (Doc. No. 129.) In that motion, petitioner raised several claims challenging the effectiveness of his counsel, Livingston. At the evidentiary hearing on his motion, however, he abandoned all but one of his claims of ineffective assistance of counsel. (Evid. Hr'g Tr. 5/4/2007 at 10-12.) The only claim of ineffective assistance of counsel that he pursued was that Livingston failed to impeach the credibility of the arresting officer, Officer Mercurio, at the suppression hearing by using the police reports and educe a credibility ruling from the court. (Id.; Evid. Hr'g Tr. 5/25/2007 p. 38-39; 46-47.) After an evidentiary hearing and considering the parties' proposed findings of fact and conclusions of law, the court in a written opinion denied the motion. (Doc. No. 261.)

---

[5] The Supreme Court in Massaro held that ineffective assistance of counsel claims may be collaterally reviewed even when those claims were not raised on direct appeal. Thus, a claim based upon ineffective assistance of counsel is an exception to the general rule that only claims raised on direct appeal may be raised on collateral review absent a showing of cause and prejudice. See Massaro, 538 U.S. 504 (citing United States v. Frady, 456 U.S. 152, 167-68 (1982); Bousley v. United States, 523 U.S. 614, 621-22 (1998)). "The procedural-default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." Id.

**Count Two**

Subsequent to petitioner's conviction at Count One, Count Two was tried before a jury. On March 18, 2005, petitioner was convicted of possession with the intent to distribute five grams or more of crack cocaine (Count Two). Sentencing took place on July 28, 2005 and September 6, 2005. Petitioner was sentenced to a term of three hundred sixty months imprisonment, to run concurrent with the eighty-five month sentence imposed at Count One. A judgment with respect to Count Two was entered on September 14, 2005. (Doc. No. 180.)

On September 28, 2005, petitioner timely appealed to the United States Court of Appeals for the Third Circuit. On November 26, 2006, the court of appeals affirmed his conviction and sentence. Petitioner filed a petition for writ of certiorari, which was denied on April 5, 2007.

**Hearings with respect to Count One § 2255 Motion**

On April 27, 2007, May 4, 2007 and May 25, 2007, shortly after petitioner's writ of certiorari with respect to Count Two was denied, the court held a hearing regarding petitioner's Count One § 2255 Motion. On July 29, 2008, after reviewing the motion, the government's brief in opposition, and the parties' proposed findings of fact and conclusions of law, the court denied petitioner's Count One § 2255 Motion.

**Section 2255 motion with respect to Count Two**

On March 17, 2008, petitioner filed a second § 2255 motion (Doc. No. 257), which was limited to challenging the conviction and sentence at Count Two. The conviction and sentence with respect to Count One was not challenged in the Count Two § 2255 Motion. The issues petitioner raised in the Count One § 2255 Motion and the Count Two § 2255 Motion (prior to the amendment) were the same: whether Livingston was unconstitutionally ineffective for failing to impeach Officer Mercurio during the suppression hearing with the police reports, which were

turned over to Livingston immediately prior to the suppression hearing, and for failing expressly to request the court to make a credibility determination about Officer Mercurio's testimony ("First Issue"). The government responded to petitioner's Count Two § 2255 Motion on April 8, 2008. (Doc. No. 258.)

On August 13, 2008, petitioner filed the motion to amend (Doc. No. 262.) Petitioner asserted that his transfer to the court-ordered prison was delayed, and while awaiting transfer, he was not permitted to utilize the law library. Subsequent to the transfer, petitioner became aware of an additional issue that he wanted to include in that motion. On August 13, 2008, petitioner filed the motion to amend seeking to include that issue.

On October 6, 2008, prior to the court ruling upon petitioner's motion to amend, petitioner filed his amendment. (Doc. No. 264.) In the amendment, petitioner claimed that Livingston's counsel was ineffective because he failed to request a continuance at the suppression hearing in order to photograph the scene of the alleged drug transaction from the position in which Officer Mercurio testified he observed the transaction ("Second Issue"). Petitioner attached copies of eight photographs of the scene. Petitioner alleges that photographs of the scene would have impeached Officer Mercurio's credibility.

On January 22, 2009, the court issued a memorandum opinion granting petitioner's motion to amend, and denying in part the Count Two § 2255 Motion. (Doc. No. 268.) The court denied the motion to vacate with respect to the First Issue, and because the court granted the motion to amend, the court provided the government twenty days to file a response to the Second Issue. After the court granted the government several extensions of time to file its response, the government responded on June 1, 2009. (Doc. No. 277.)

## II.  Standard of Review

A district court is required to hold an evidentiary hearing on a motion to vacate sentence filed pursuant to 28 U.S.C. § 2255 unless the motions and files and records of the case show conclusively that the movant is not entitled to relief.  28 U.S.C. § 2255 ("Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."); United States v. Booth, 432 F.3d 542, 545-46 (3d Cir. 2005).

Under 28 U.S.C. § 2255, a federal prisoner in custody may move the court which imposed the sentence to vacate, set aside or correct the sentence upon the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  The Supreme Court read the statute as stating four grounds upon which relief can be granted:

> (1) "that the sentence was imposed in violation of the Constitution or laws of the United States," (2) "that the court was without jurisdiction to impose such sentence," (3) "that the sentence was in excess of the maximum authorized by law," and (4) that the sentence "is otherwise subject to collateral attack."

CHARLES ALAN WRIGHT, NANCY J. KING & SUSAN R. KLEIN,  FEDERAL PRACTICE AND PROCEDURE § 593 (3d ed. 2004) (quoting Hill v. United States, 368 U.S. 424, 426-27 (1962)). The statute provides as a remedy for a sentence imposed in violation of law that "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255.

### III. Discussion

#### A. Need for a Hearing

In this situation, the motion and the files and records of the case conclusively demonstrate that petitioner is not entitled to relief on the pending claim in the Count Two § 2255 motion. The record has already been developed with respect to petitioner's pending claim regarding whether Livingston's counsel was constitutionally deficient at the suppression hearing. A hearing on the pending motion is not necessary, and the court denies the motion.

Rule 4(b) of the Rules Governing § 2255 Proceedings provides that: "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the [§ 2255] motion and direct the clerk to notify the moving party." RULES GOVERNING § 2255 PROCEEDINGS 4(b). The threshold the movant must meet to obtain an evidentiary hearing is considered to be low. United States v. Booth, 432 F.3d 542, 546 (3d Cir. 2005) (internal citations omitted). The Advisory Committee Notes with respect to Rule 4 further explain "[s]ince the motion is part of the criminal action in which was entered the judgment to which [the motion] is directed, the files, records, transcripts, and correspondence relating to that judgment are automatically available to the judge in his consideration of the motion." RULES GOVERNING § 2255 PROCEEDINGS 4(b) advisory committee's notes.

Despite the low threshold, petitioner is not entitled to an evidentiary hearing in this case. The record includes the original suppression hearing transcript, evidentiary exhibits from the suppression hearing, the Count One § 2255 motion and the responses to that motion, the Count One § 2255 evidentiary hearing transcript, and the post-hearing findings of fact and conclusions of law. The record illustrates Livingston's strategic choices at the suppression hearing, and

includes evidence of Livingston's investigations in preparation for the suppression hearing. The record also includes a photograph and diagram of the alleged crime scene. For the reasons that follow, the evidence of record conclusively demonstrates that petitioner is not entitled to relief.

### B. Ineffective Assistance of Counsel

To establish ineffective assistance of counsel in violation of the Sixth Amendment, petitioner must prove: (1) deficient representation, meaning that counsel's representation fell below an objective standard of reasonableness; and (2) prejudice, meaning that there is a reasonable probability that the outcome of the proceeding would have been different if counsel did not make unprofessional errors. Williams v. Taylor, 529 U.S. 362, 390-91 (2000); Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).

### 1. Prejudice

Concerning the prejudice prong, petitioner must go beyond proving that counsel's unprofessional errors had "some conceivable effect on the outcome of the proceeding." Strickland, 466 U.S. at 693. To establish prejudice, petitioner must show there is a reasonable probability that, but-for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." Williams, 529 U.S. at 391. The United States Court of Appeals for the Third Circuit directed courts to address the prejudice prong of the analysis first. See McAleese v. Mazurkiewicz, 1 F.3d 159, 170 (3d Cir.), cert. denied, 510 U.S. 1028 (1993) ("Indeed, this Court has read Strickland as requiring the courts to decide first whether the assumed deficient conduct of counsel prejudiced the defendant.") (internal quotations and citations omitted). The court of appeals in McAleese noted that Strickland itself recognized that

> [A] court need not determine whether counsel's
> performance was deficient before examining the

> prejudice suffered by the defendant as a result of the
> alleged deficiencies. The object of an ineffectiveness
> claim is not to grade counsel's performance. If it is easier
> to dispose of an ineffectiveness claim on the ground of
> lack of sufficient prejudice, which we expect will often
> be so, that course should be followed.

Id. at 171 (quoting Strickland, 466 U.S. at 697). The court, therefore, will examine the prejudice

prong of the Strickland analysis before considering the deficient representation prong.

Here, even assuming Livingston's alleged deficiencies were professionally unreasonable,

petitioner was not prejudiced. Petitioner asserts that if Livingston had requested and received a

continuance, he would have been able to obtain photographs that would have impeached Officer

Mercurio:

> Had Mr. Livingston requested continuance in light of
> [Mercurio's testimony of his position from which he conducted
> surveillance] the court would have discovered that a) only one
> street light is present near row houses and it protudes [sic] over the
> street and is completely blocked from sidewalk by numerous trees;
> b) looking up the northern side of Susquehanna St. from the
> northern side of street, even from the beginning of the 7500 block
> which is even closer than the officer's position halfway down the
> 7400 block, the sidewalk in front of 7521 is not visible due to trees
> which line the entire sidewalk on the northern side of the street;
> and c) details testified to can not be viewed from 100 yards, even
> using binoculars at 10:30 at night.
>
> . . .
>
> Had Court discovered that officers could not have viewed
> alleged hand-to-hand exchange, thereby impeaching Officer
> Mercurio's credibility, the fruits of June 8, 2002 arrest would have
> been suppressed.
> Absent the fruits of the June 8, 2002 arrest the Petitioner
> would have been acquitted at Count 2.

(Pet'r's Amendment (Doc. No. 264) at 12-13.) Despite petitioner's arguments, Officer Mercuiro

would not have been impeached if Livingston acted in the manner petitioner suggests. All the

relevant facts were presented to the court. At the suppression hearing, Livingston introduced

into evidence a photograph that provided the court with a picture of the area from the direction in which Officer Mercurio conducted surveillance. Petitioner's argument that details could not have been observed by Officer Mercurio from his position on the night in question is pure speculation. Furthermore, Defendant's Exhibit B shows the lone streetlight and the trees in front of the row houses located on the 7500 block of Susquehanna Street. Additional photographs would not have provided the court with any compelling facts not already in evidence. The record reflected the setting in which the alleged drug transaction occurred. Additional pictures would have been cumulative, and would not have had an effect on the outcome of the suppression hearing. Livingston's failure to request a continuance, therefore, did not prejudice petitioner.

### 2. Deficient representation

In evaluating whether counsel's performance is deficient, the relevant inquiry is whether counsel's assistance was reasonable considering the totality of the circumstances. Strickland, 466 U.S. at 688. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Id. at 690-91. "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected . . . if they are based on professional judgment." Id. at 681. "It is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689. "The Supreme Court directs that our 'scrutiny of counsel's performance must be highly deferential' to avoid holding counsel incompetent because of reasonable strategic or tactical judgments which, with the benefit of tactical hindsight, might

prove not to have best served his client's interests." <u>United States v. Loughery</u>, 908 F.2d 1014, 1018 (D.C. Cir. 1990) (quoting <u>Strickland</u>, 466 U.S. at 689).

With respect to the performance prong, Livingston did exactly what petitioner argues he should have requested a continuance to do. Petitioner argues he should have requested a continuance to photograph the relevant area, but, prior to the hearing, Livingston visited the area with his investigator and took pictures. A picture of the relevant area was introduced by Livingston at the suppression hearing, and Livingston used it during his direct examination of petitioner. The picture was taken from the area in which Officer Mercurio was positioned, and provided the court with Officer Mercurio's relative perspective. Livingston questioned petitioner about the time of day – night – in which the alleged drug transaction occurred. Livingston also questioned petitioner where he was located when the transaction allegedly took place, and petitioner answered that he was positioned relatively far down the 7500 block. The picture illustrated the distance between Officer Mercurio and the location of the alleged transaction, as well as the obstacles that were in his line of sight. Livingston also used Government's Exhibit No. 1 to provide a visualization of the scene. Since Livingston introduced the exact kind of evidence that petitioner argues he should have, Livingston could not have provided ineffective assistance on the bases raised by petitioner.

Livingston's overall strategy at the suppression hearing was not deficient, and he did not act unreasonably with respect to the impeachment strategies he pursued. "Trial counsel's strategic decisions are virtually unchallengeable on an ineffective assistance of counsel claim unless they are based on deficient investigation, in which case the presumption of sound trial strategy founders on the rocks of ignorance." <u>Forsyth v. Ault</u>, 537 F.3d 887, 892 (8th Cir. 2008) (internal citations omitted). Given the totality of the evidence, petitioner's claim of ineffective

assistance of counsel must fail. For reasons set forth in the January 22, 2009 memorandum opinion and in this opinion, the motion to vacate, as amended, will be denied in its entirety.

## IV. Certificate of Appealability

When a district court issues a final order denying a § 2255 petition, the court must also make a determination as to whether a certificate of appealability ("COA") should issue or the clerk of the court of appeals shall remand the case to the district court for a prompt determination as to whether a certificate should issue. <u>See</u> 3rd Cir. LAR. 22.2 (2002). Based upon the motion and files and records of the case, and for the reasons set forth herein and in the court's January 22, 2009 memorandum opinion (Doc. No. 268), the court finds that petitioner has not shown a substantial denial of a constitutional right. Therefore, a COA should not issue.

## V. Order

AND NOW, this 24th day of June, 2009, upon consideration of petitioner's motion to vacate, petitioner's amendment, and the government's responses, IT IS HEREBY ORDERED that petitioner's motion to vacate or set aside judgment of conviction by a person in federal custody pursuant to 28 U.S.C. § 2255 (Doc. No. 257), as amended, is DENIED.

IT IS FURTHER ORDERED that no certificate of appealability should issue.

By the court:

 /s/ JOY FLOWERS CONTI
Joy Flowers Conti
United States District Judge

cc:     counsel of record

James Frazier
#07530-068
USP Hazelton
U.S. Penitentiary
P.O. Box 2000
Bruceton Mills, WV 26525